# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

**JOHN ANTHONY GENTRY,**
Plaintiff

vs.

**THE HONORABLE JUDGE**
**JOE H THOMPSON**
**CIRCUIT COURT JUDGE**
Defendant

)
)
)
)
)
)
)
)
)
)
)

**CASE NO. 3 – 16 - 2617**

JURY DEMANDED (12)

## <u>AMENDED COMPLAINT</u>

Pursuant to the 28 USC, Federal Rules of Civil Procedure, Rule 15 (a) (1) (A), a party may amend its pleading once, as a matter of course within 21 days after serving.  As evidenced in Plaintiff's Proof of Service, Defendant was properly served Summons pursuant 28 USC, Federal Rules of Civil Procedure, Rule 4 (a), (b), (c), (j) and (m) on or about October 12, 2016. Pursuant to 28 USC, Federal Rules of Civil Procedure, Rule 4 (e) (1), a Summons may be served in accordance with state law in the state where the district court is located.  Further pursuant to Rule 4 (j) (2) serving a State or Local Government requires serving in a manner prescribed by that state's law for serving summons or like process on such a Defendant.

Tennessee Rules of Civil Procedure, Rule 4.04 (6) requires a copy of the summons and complaint be provided to the Attorney General of the state.  Further pursuant to Tennessee Rules of Civil Procedure, Rule 4.04 (10), service may be made by certified return receipt U.S.

1

mail. Plaintiff's Proof of Service, evidences proper service of summons via certified return receipt mail and that a copy of the summons and complaint were provided to the Attorney General as required by T.R.C.P.

Plaintiff is hearing impaired caused by his honorable military service of eight years. Upon reading of transcripts of proceedings recently obtained by Plaintiff, Plaintiff further recognized that his right of Equal Protection Under the Law was also violated by Defendant. Plaintiff also included in his original Complaint the statement, "*Any failure to follow the guidelines set forth in the Constitution of the United States and constitutional law, makes a judge's action no longer a judicial act but an individual act as the act represents their own prejudices and goals.*" Based on this statement in Plaintiff's original complaint, Plaintiff further amends his complaint to clarify his prayer for relief to this Honorable Court. Accordingly, pursuant to the rules of procedure and Plaintiff's basis for amendment of pleadings as stated above, Plaintiff amends his complaint as follows;

Plaintiff, JOHN ANTHONY GENTRY, as Pro Se, complaining of the Defendant, THE HONORABLE JUDGE JOE H THOMPSON, CIRCUIT COURT JUDGE, pleading hypothetically and in the alternative, states as follows;

## **PARTIES, JURISDICTION AND VENUE**

1. At all relevant times herein, Plaintiff JOHN ANTHONY GENTRY resides at 208 Navajo Court, Goodlettsville, Sumner County, Tennessee, 37072, (615) 351-2649.

2

2. At all relevant times herein, Defendant HONORABLE JUDGE JOE H THOMPSON was and is a Circuit Court Judge of Sumner County, with his principle office located at 100 Courthouse, Gallatin, Sumner County, Tennessee, 37066, (615) 452-6771.

3. Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

4. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1983 for violations of certain protections guaranteed him by the Fourteenth Amendment of the federal Constitution, by the Defendant under color of law, in his capacity as a judge in the Circuit Court of Sumner County Tennessee.

5. Because Defendant's principal office and Plaintiff's residence are both located in Middle Tennessee and because the allegations contained in this complaint are alleged to have occurred in Middle Tennessee, proper venue for this complaint is in the United States District Court for the Middle District of Tennessee.

## GENERAL ALLEGATIONS

6. At all relevant times herein, Plaintiff JOHN ANTHONY GENTRY, has been involuntary pro se in a divorce proceeding with his former wife Katherine Wise Gentry.

7. At all relevant times herein, Defendant Honorable Judge Joe H Thompson presided over the divorce case 2014CV393, John Anthony Gentry vs. Katherine Wise Gentry.

8. At all relevant times herein, Defendant Honorable Judge Joe H Thompson was and is subject to Tennessee Supreme Court Rule 10, Code of Judicial Conduct.

3

9. At all relevant times herein, Defendant Honorable Judge Joe H Thompson was and is required to uphold the oath of his office.

10. At all relevant times herein, Defendant Honorable Judge Joe H Thompson was and is required to uphold the rights and privileges of all citizens of the United States within his jurisdiction including their Constitutional Rights.

11. Title 42 U.S. Code § 1983 appropriately provides judges with general immunity from injunctive relief for an act or omission taken in a judge's official capacity *unless a declaratory decree was violated* (emphasis added). The intentional, willful and repeated violations Plaintiff's constitutional right of due process and Plaintiff's right to be heard committed by Defendant against Plaintiff are certainly in violation of the declaratory decrees laid out in our federal constitution.

12. During divorce proceedings presided over by Defendant, Defendant intentionally, willfully and repeatedly violated Plaintiffs Constitutional right of due process and right to be heard.

13. The Defendant's actions that violated Plaintiff's right of due process are acts by the Defendant that are plainly outside the jurisdiction of the Defendant in his capacity as judge.

14. The federal constitution guarantees a right of due process which has been consistently interpreted to include a right to be heard. Acts by the Defendant absent jurisdiction to violate constitutional rights vitiate Defendant's judicial immunity.

15. Defendant Honorable Judge Joe H Thompson ruled in matters while refusing to hear Plaintiffs arguments.

16. Defendant Honorable Judge Joe H Thompson repeatedly refused to hear Plaintiff's Oral Arguments.

17. Defendant Honorable Judge Joe H Thompson willfully and intentionally manipulated proceedings denying Plaintiff's right to be heard and right of due process.

18. Defendant Honorable Judge Joe H Thompson willfully and intentionally obstructed Plaintiff's evidence violating Plaintiff's right to be heard and right of due process.

19. Defendant Honorable Judge Joe H Thompson willfully and intentionally made false statements in a court of law to hide his violation of Plaintiff's right to be heard and right of due process.

As this Honorable Court is well aware, due process and a right to be heard are principles basic to our society. In the case, Armstrong v. Manzo, 380 US 545 - Supreme Court 1965, the United States Supreme Court stated;

> A fundamental requirement of due process is "the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394. **It is an opportunity which must be granted at a meaningful time and in a meaningful manner**. The trial court could have fully accorded this right to the petitioner **only by granting his motion to set aside the decree and consider the case anew. Only that would have wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place. His motion should have been granted**.

So too, should have this Plaintiff's Motion to Recuse been granted by the trial court in the case underlying this cause of action. Throughout the divorce case proceedings underlying this complaint, despite the great harm caused by numerous violations of Plaintiff's constitutional rights, Plaintiff remained respectful. Even while the trial court refused to allow

Plaintiff to speak, obstructed Plaintiff's testimony and evidence, even after heaping all of that injustice upon Plaintiff's shoulders, this Plaintiff remained respectful to the office of the judiciary.

Despite the overwhelming opposition of a severely biased court, and Wife's overzealous top-notch legal team, and no prior legal experience of his own, Plaintiff proved his case and turned the court in his favor. Even after proving his case and Wife's perjury, the trial court still awarded 100% of the marital assets to Wife. Plaintiff asserts that the trial court had previously tied its own hands as a result of its prior decisions stemming from the trial court's bias and violations of Plaintiff's Civil Rights.

Because the trial court was unwilling to "wipe the slate clean" and recuse itself and unwilling to correct or even recognize its mistakes, Plaintiff sadly believes the trial court judge is apt to make the same mistakes again with future litigants. Plaintiff sincerely does not wish any future litigants to suffer the same injustice he has suffered. It is for these reasons, that Plaintiff has tendered this civil rights complaint to the United States District Court for the Middle District of Tennessee. It is the sincere hope of Plaintiff that through the intervention of the Federal Court in this matter, that Defendant will learn from his mistakes and become a better judge and better serve the citizens of Sumner County and their welfare entrusted to him.

Although a judge performing judicial functions is afforded general immunity, denial of constitutional and civil rights is absolutely not a judicial function and this conflicts with any definition of a judicial function. The U.S. Supreme Court has consistently held judges accountable when their knowing and willing actions fell outside the boundaries of the

6

prerequisites of their judicial responsibilities. Any failure to follow the guidelines set forth in the Constitution of the United States and constitutional law, makes a judge's action no longer a judicial act but an individual act as the act represents their own prejudices and goals. Furthermore, case law also shows us that when a judge acts as a trespasser of the law, when a judge does not follow the law, he loses subject matter jurisdiction and the judge's orders are void, of no legal force or affect.

The case Pulliam v. Allen, 466 US 522 - Supreme Court 1984, clearly establishes that judges are not absolutely immune when civil rights violations have occurred. Indeed, in some extreme cases, federal courts have awarded not only declaratory relief but injunctive relief as well. In the Pulliam case, the Supreme Court of the United States stated as follows;

> Although injunctive relief against a judge rarely is awarded, the United States Courts of Appeals that have faced the issue are in agreement that judicial immunity does not bar such relief.

In the U.S. Supreme Court case, Mathews v. Eldridge, 424 US 319 - Supreme Court 1976, our Supreme Court stated;

> The "right to be heard before being condemned to suffer grievous loss of any kind, **even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society**." Joint Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552 (1965).

In the referenced case above, Armstrong v. Manzo, 380 US 545 - Supreme Court 1965, the earlier Supreme Court stated;

A fundamental requirement of due process is "the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394. **It is an opportunity which must be granted at a meaningful time and in a meaningful manner**. The trial court could have fully accorded this right to the petitioner **only by granting his motion to set aside the decree and consider the case anew. Only that would have wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place. His motion should have been granted**.

In the case, Goldberg v. Kelly, 397 US 254 - Supreme Court 1970, our Supreme Court stated the following;

"The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, **and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.** These rights are important in cases such as those before us, **where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.**

In the case, Murphy v Ross, Civil Action No. 3:14cv870, United States District Court, E.D. Virginia, Richmond Division, Senior U.S. District Judge Robert E. Payne stated;

Judicial immunity "is vitiated only when the judicial officer acts in the clear absence of all jurisdiction." Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987) (citing Stump v. Sparkman, 435 U.S. 349 (1978)).

When Defendant exceeded his jurisdiction and violated Plaintiff's constitutionally protected rights, Defendant vitiated himself of his judicial immunity and is liable for injunctive relief.

Furthermore, when Defendant violated Plaintiff's constitutional right of due process, Defendant

was in violation of the declaratory decrees laid out in our constitution and is liable for Plaintiff's injuries pursuant to Title 42 U.S. Code § 1983 civil action for deprivation of rights.

## **Statement of Facts**

**SEPTEMBER 15, 2015 CIVIL RIGHTS VIOLATION**

During a hearing on September 15, 2015, as the U.S. Supreme Court stated in the Goldberg case above, the exact same circumstances occurred in this case. (1) Plaintiff was clearly denied an opportunity to defend himself by confronting an adverse witness. (2) Plaintiff was clearly denied oral arguments. (3) Plaintiff was clearly denied his right to argue against challenges resting on incorrect and misleading factual premises. (4) Plaintiff was clearly denied his right to argue challenges resting on a misapplication of rules and procedures.

During the September 15, 2015 hearing of Plaintiff's Motion to Reconvene, Plaintiff was repeatedly denied his basic right to present his own arguments and evidence orally. Had the trial court judge recognized Plaintiff's basic right to be heard, Plaintiff would have rebutted and proven false, opposing counsels misleading and false arguments. Had the trial court recognized Plaintiff's right to be heard, Plaintiff would have also made the trial court aware of its responsibility to reconvene the hearing of Plaintiff's Petition for Contempt.

On August 7, 2015, Plaintiff's Motion to Request the Honorable Judge Thompson to Recuse Himself and To Declare a Mistrial or Petition For Contempt Hearing or In the Alternative to Reconvene Hearing for Petition For Contempt was scheduled to be heard. During this hearing, Plaintiff asked the trial court judge to state his findings of fact and conclusions of

law for denying his Petition for Contempt. The trial court judge simply responded that he didn't have to state his findings and conclusions in contradiction of the Appellate Court's opinion in Bruce v. Bruce, 801 SW 2d 102 - Tenn: Court of Appeals, Middle Section 1990.

Plaintiff further complained in his written motion that he should not be involuntarily without counsel. Plaintiff also complained that because the court relied on a misrepresentation of facts and also took more than 125 days to rule on Pendente Lite Support resulting in Plaintiff's loss of representation, that there was an appearance of bias and the judge should recuse himself. Plaintiff also complained that the Petition for Contempt hearing should reconvene. The trial court simply denied Plaintiff's Motion for recusal without stating a basis. The trial court also denied Plaintiff's Motion to Reconvene without hearing arguments, simply stating the court had already ruled on that matter.

On September 15, 2015, Plaintiff's second Motion to Reconvene was scheduled to be heard. During this hearing the following dialogue took place;

> THE COURT: What sort of motion do you want to reconvene?
> MR. GENTRY: **I did not have an opportunity to cross-examine Ms. Gentry. Ms. Taylor stated -- during the hearing Ms. Taylor stated that she should have been allowed to cross-examine and that a ruling should not be issued without her having an opportunity to cross-examine. I was not given that fair opportunity.** If I could show the Court and have an opportunity to cross-examine Ms. Gentry, I can assure you that all of the behavior that my wife has delegated as improper on my part is just ridiculous allegations.
> THE COURT: And you don't think you're going to get that opportunity at the final hearing?
> MR. GENTRY: The problem is, also in one of my motions that was not heard is in regards to partner compensation. So I've already demonstrated to this Court and there's clear precedence that a spouse that contributes to a business during the time of marriage whether it's owned by the other

spouse before the marriage or not is entitled to the appreciation of the business. Until my portion is paid out, I should continue to receive my partnership income. We demonstrated in the hearing that I took half pay and no pay to facilitate breath (sic growth) in the business. We presented evidence that I contributed significantly to the growth of the business. And what's happening now is the dissipation of assets. If she continues to run the business now without compensating my fair share, she's going to have a bill that she can't afford to pay, Your Honor.

THE COURT: What's your proof in dissipation of assets?

MR. GENTRY: She took $20,000 and paid her legal fees.

THE COURT: What proof do you have --

MR. GENTRY: Valuation from our -- we both agreed to Vic Alexander. And the valuation in here, he conducted that from -- he made that discretionary spending, because he also recognizes that spending company funds on a divorce attorney is not proper use of company funds. So in doing his valuation, in other words, he's adding that back in to the business income, because he knows she shouldn't have paid that.

THE COURT: Sir, what's your response to that?

After the below response and false and misleading statements by Wife's attorney Mr.

Lankford's were made to the court, Plaintiff was ubiquitously denied his right to be heard.

Plaintiff was not allowed to speak or address the court in any regard whatsoever.

MR. LANKFORD: Your Honor, this is our fourth time to be here. I point the Court to our response to husband's motion to reconvene and complete hearing for petition of contempt that we filed yesterday with this Court. Your Honor, the Court's already denied this motion. We were here on a six-hour hearing when Mr. Gentry was represented on the petition for contempt. We came back to finish up his petition on the stock certificates. We came back on what he titled -- to be clear, he filed this on July 20th. He filed a motion titled, among other things, to reconvene hearing for petition for contempt, which he requested this Court to reconvene to properly complete the trial of husband's petition for contempt. On August 4th, we had a hearing on that and we were awarded our attorney's fees for coming down here arguing something we argued twice. On August 4th he filed the same motion for which he literally copied and pasted his previous motion that had been denied and we had been awarded attorney's fees and filed and made us come down here and argue this again. This is our fourth time in front of this Court

on this issue. We now have final hearing dates. The Court has entered an order on September 9th in which it denied husband's motion to recuse and to declare a mistrial petition for contempt, or in the alternative, to reconvene hearing for petition for contempt. The Court's already denied this motion. He literally copied and pasted his previous motion to reconvene into a new motion to reconvene and filed it while the Court has denied this motion. We would ask for our attorney's fees again having to defend this motion.

MR. GENTRY: **May I respond, Your Honor?**

THE COURT: **Let me read the file a little bit.** (Reading document.) So back when we had the hearing that went late into the evening, we disposed of the petition for contempt, did we not?

MR. LANKFORD: Yes, Your Honor. That was dismissed on directed verdict.

MR. GENTRY: **Your Honor, may I address that, please?**

THE COURT: **No. Hang on. September 15 Transcript P. 4 – 6**

After further dialogue by the Court, Plaintiff again respectfully asked to address the

Court as follows;

MR. GENTRY: **Can I address that just briefly, Your Honor?**

THE COURT: **You really can't,** because we've been here multiple times.

MR. GENTRY: I haven't been heard multiple times, Your Honor. **September 15 Transcript P. 9 – 10**

MR. GENTRY: A couple of issues --

THE COURT: You --

MR. GENTRY: **You won't hear me, Your Honor?**

THE COURT: **No.**

MR. GENTRY: **That's a violation of judicial conduct, sir. I've not had a chance to be heard.**

THE COURT: No. It's absolutely not and here's why. You don't understand the law well enough to understand what I'm telling you. I'm not talking down to you. It's like I don't understand Chinese. I've never been trained in Chinese. All right? You had an attorney. Your attorney presented all of your proof on the petition for contempt and you didn't meet your burden of proof based upon the proof that your attorney put on. So I ruled in Ms. Gentry's favor on the petition for contempt. That part is over. Your motion's denied. Again, I'm awarding them their

attorney's fees. Every time you bring up this petition for contempt, you're going to come here and I'm going to deny it unless there is something completely unforeseen. And I don't see it yet. And they're going to get their attorney's fees every time. Every time. Now, we've got a divorce hearing and that's what you need to be concentrating on. Okay?

MR. GENTRY: **I'm just disappointed that the Court won't hear me.**

THE COURT: **Well, we did hear you back in March.**

MR. GENTRY: **You did not, sir.**

THE COURT: Heard you until eight o'clock.

MR. GENTRY: This is a travesty, Your Honor. That's --

THE COURT: Mr. Gentry, that's it. Just have a seat. **September 15 Transcript P. 10 – 13**

In the above dialogue, there are a multitude of factual and evidenced statements made by the trial court demonstrating its violation of Plaintiff's basic civil right to be heard as well as a complete disregard or perhaps (meaning no disrespect) a lack of the trial court's knowledge of Tennessee Rules of Civil Procedure.

(1) Opposing counsel's statements were false and misleading and Plaintiff should have been afforded the opportunity to rebut those statements as determined by the United States Supreme Court in the Goldberg case referenced above.

(2) The trial court judge making the statement "*Again, I'm awarding them their attorney's fees. Every time you bring up this petition for contempt, you're going to come here and I'm going to deny it unless there is something completely unforeseen. And I don't see it yet,*" begs the question, 'How can the trial court be made aware of something "*completely unforeseen*" if Plaintiff is not allowed to speak and present arguments?

(3) The trial court judge appears ignorant of T.R.C.P. Rules 56.05, 54.02, and 60.02 all of which the court should have considered, whether applicable or not, which they most certainly were applicable.

(4) Although the court may believe Plaintiff was heard before, this does not provide justification for Plaintiff not being heard in the present matter on that day.

(5) In the court's statement *"You don't understand the law well enough to understand what I'm telling you."*; the court implies that there are underlying principles of law supporting the court's decision to not allow Plaintiff to speak but the court did not validate its statement by referencing any principles of law. The trial court's statement here is clearly contradictory to the U.S. Supreme Court's opinion and T.R.C.P. rules referenced above.

In Wife's attorney making the false statement that the court heard the same matter four times: Mr. Lankford referenced **(a)** "We were here on a six-hour hearing when Mr. Gentry was represented on the petition for contempt.", **(b)** We came back to finish up his petition on the stock certificates, **(c)** "He filed a motion titled, among other things, to reconvene hearing for petition for contempt, which he requested this Court to reconvene to properly complete the trial of Plaintiff's petition for contempt."

It is worth noting, that although Wife's counsel stated the court heard the same matter four times, Wife's counsel falsely recounted only three occasions and not four. The truth is in fact, that the matter had not been heard one single time.

To consider the fallacy of Wife's counsel's statement to the court, it is necessary to consider the procedural history and transcripts of the case thus far.

Plaintiff's Petition for Contempt or in the Alternative Pendente Lite Support and his Motion to Determine Partner Compensation was heard on March 10, 2015. That hearing was continued to be heard until July 1, 2016 during which time Plaintiff's counsel withdrew for non-payment because the trial court failed to rule on temporary support on March 23, 2015 as it stated it would. During the July 1, 2016 continuation hearing of that matter, Plaintiff was involuntary pro se and without counsel, Plaintiff was denied his right to be heard and the hearing did not continue as it should have.

In Fox v. Fox, 657 S.W.2d 747 (Tenn.1983), the Tenn. Supreme Court stated:

> It was established **over a century ago** ... _Thompson v. Thompson,_ 40 Tenn. 527, 529 (1859). **If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel**

Obviously, Plaintiff should not have been denied temporary support resulting in his loss of legal representation. Furthermore, the fact that Plaintiff was not allowed cross examination proves the matter was not fully adjudicated and Plaintiff's constitutional right to be heard was violated.

During the March 10, 2015 hearing, the following dialogue took place;

Speaking to Ms. Taylor (Wife's counsel), Judge Thompson stated:

> "... _That's what we're going to do today. And then, **obviously, you'll be able to question him. You'll be able to cross examine him**._" **March 10, 2015 Transcript P. 179/180**

Regarding the same issue of testimony, Ms. Taylor stated to the court:

> "*As far as continuing with Ms. Gentry's testimony, I just – I mean, the direct and cross could go on, if it's like Mr. Gentry's, another few hours*" **March 10, 2015 Transcript P. 177**

Judge Thompson also further stated:

> "*I want to hear Ms. Gentry's full story on what her role in the business has been, as opposed to Mr. Gentry's story*" **March 10, 2015 Transcript P. 210**

Ms. Taylor also made the following statement to the court:

> **"*As long as I have a chance to cross-examine it and we don't have a ruling today*" March 10, 2015 Transcript P. 181**

However, in an obvious departure from the accepted and usual course of judicial proceedings and in contrast and contradiction to the above transcribed statements, opposing counsel was permitted direct examination of Wife's testimony while cross examination by Plaintiff was denied.

The continuation hearing on July 1, 2015, in which Wife was expected to testify for "hours", only lasted a few minutes because Plaintiff was involuntary pro se and thus denied access to the court. At the opening of the hearing, there were brief back and forth arguments between Plaintiff as involuntary pro se and Wife's attorney, without any evidence being submitted to support Wife's false arguments. The trial court then asked Plaintiff for his arguments of law, to which Plaintiff had absolutely no response since at that time Plaintiff had absolutely no knowledge of the law. Without any arguments of law by Plaintiff, the trial court then denied Plaintiff's Motions and declared the hearing closed. Since Plaintiff was involuntary pro se and unable to make arguments of law at the time, and because cross examination of Wife

was not permitted, the matter was clearly not fully adjudicated. Because Plaintiff was **involuntarily** without legal representation, he was not heard.

On August 7, 2015 Plaintiff's <u>Motion to Recuse or Reconvene</u> and his <u>Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income Or In The Alternative Set Trial Date To Substantiate Husband's Claim of Stock Ownership</u> was scheduled to be heard. As referenced above, the trial court refused to state findings of fact and conclusions of law regarding Plaintiff's <u>Petition for Contempt Or In the Alternative Pendente Lite Support</u>. The trial court denied Plaintiff's <u>Motion to Recuse</u> without stating a basis for its opinion. The trial court denied Plaintiff's <u>Motion to Reconvene</u> simply stating the court had already ruled in that matter. The trial court also denied Plaintiff's <u>Motion to Compel Wife to Return Husband's Stock Certificate</u> without hearing arguments, stating that was a matter for the final hearing. The issue of Plaintiff's stock ownership in the business was most certainly not an issue for the final hearing as Plaintiff was being denied income from his business during pendency resulting in his loss of legal representation. During the March 10, 2015 hearing the following dialogue took place;

> MR. GENTRY: She issued the stock.
> MS. PERKY: She issued the stock and then she refused to give it to him, essentially. She got mad at him and said, Well, if we're not getting back together, I'm not going to give it to you.
> THE COURT: All right. But right now he doesn't have possession of any stock certificates that show he has an ownership interest. So what I'm asking is, given that set of circumstances, is there any guidance for me out there with respect to how I handle this claim of employee versus owner? **March 10, 2015 Transcript P. 47**

With this background information regarding proceedings in this matter, let us now consider Mr. Lankford's statement that Plaintiff's Motion to Reconvene had already "been heard four times".

Plaintiff's <u>Petition for Contempt Or In the Alternative Pendente Lite Support</u> and his <u>Motion to Determine Partner Compensation</u> were partially heard on March 10, 2015 and continued to July 1, 2015. During the July 1, 2015 continuation hearing of these matters, Plaintiff was not heard as he was involuntary pro se and unable to make arguments of law at the time. Although, all parties desired Wife to retake the witness stand, her continued direct and cross examination testimony was not permitted. A continuation hearing that was expected to take hours was completed in only a few minutes.

During the August 7, 2015 hearing of Plaintiff's <u>Motion to Recuse or Reconvene</u> and his <u>Motion to Compel Wife to Return Husband's Stock Certificate</u>, without hearing arguments, the trial court ruled and denied Plaintiff's <u>Motion to Reconvene</u> stating the court already ruled in that matter. The trial court also ruled and denied, without hearing arguments, Plaintiff's <u>Motion to Compel Wife to Return Husband's Stock Certificate</u> simply stating this was a matter for the final hearing.

Accordingly, when Wife's attorney Mr. Lankford made the statement that these matters had "*been heard four times*" the truth of the matter was that they had not been heard one single time: a clear violation of Plaintiff's right to be heard.

During the September 15, 2015 hearing of Plaintiff's second Motion to Reconvene, had Plaintiff's basic right to be heard been recognized and had Plaintiff been allowed to exercise

Case 3:16-cv-02617   Document 6   Filed 10/19/16   Page 18 of 38 PageID #: 64

his basic right of due process, Plaintiff should have been allowed to argue that his case had had yet to be heard. Plaintiff should have at least been allowed to make these arguments. Furthermore, had Plaintiff been allowed to speak, he would have reminded the trial court judge of the applicable Tennessee Rules of Procedure as follows.

**T.R.C.P. Rule 56.05: Case Not Fully Adjudicated on Motion.** As referenced above, all parties, including opposing counsel and the trial court judge, desired a continuation of Wife's testimony during the continuation hearing which was not permitted by the trial court. As Involuntary Pro Se, Plaintiff was unable to present arguments of law. Upon later educating himself, Plaintiff should have been afforded the opportunity to present his arguments of law. Had Plaintiff been rightfully granted this opportunity, he would have cited T.C.A § 36-4-121(b)(B) (i) and the cases Raulston, Brown, Cutsinger, Powell and Keyt all of which substantiate the fact that Plaintiff should not have been denied income from his business during pendency. Clearly, Plaintiff's complaints were not fully adjudicated.

**T.R.C.P. Rule 54.02 Multiple Claims For Relief.** Until all claims are settled no claims are terminated. Since a final determination had not yet been made, Plaintiff should have been granted his Motion to Reconvene as the court's previous ruling was an interlocutory ruling and subject to revision.

**T.R.C.P. Rule 60.02 Mistakes – Inadvertence – Excusable Neglect – Fraud.** As noted in the transcript evidenced above, Plaintiff made the trial court aware of Wife's perjury. When there is fraud on the court, **res judicata does not apply** and the trial's court's previous ruling becomes irrelevant pending further proceedings that should have, but did not, take place.

Since, the trial court universally denied Plaintiff his right to speak, and violated his constitutional right to be heard, Plaintiff was unable to make these arguments and defend himself. Again, although Plaintiff very respectfully asked to be heard, the trial court denied each respectful request and indeed, Plaintiff did suffer a travesty of justice.

> *"May I respond, Your Honor?"*
> "Your Honor, may I address that, please?
> *"Can I address that just briefly, Your Honor?"*
> *"I haven't been heard multiple times"*
> *"You won't hear me, Your Honor?*
> *"I'm just disappointed that the court won't hear me."*

## MAY 3, 2016 - CIVIL RIGHTS VIOLATION

During the same September 15, 2015 hearing, the trial court indicated Plaintiff would be allowed cross examination of Wife, and would be provided an opportunity to show that Wife perjured herself during the initial hearing of Plaintiff's Petition for Contempt held on March 10, 2015. As evidenced below, Plaintiff was denied this opportunity during the final hearing. During the September 15, 2015 hearing, the following statements were made;

> MR. GENTRY: I did not have an opportunity to cross-examine Ms. Gentry. Ms. Taylor stated -- during the hearing Ms. Taylor stated (sic, demanded) that she should have been allowed to cross-examine and that a ruling should not be issued without her having an opportunity to cross-examine.
> I was not given that (sic, same) fair opportunity. If I could show the Court and have an opportunity to cross-examine Ms. Gentry, I can assure you that all of the behavior that my wife has delegated (sic alleged) as improper on my part is just ridiculous allegations.
> THE COURT: **And you don't think you're going to get that opportunity at the final hearing**? **Sept. 15, 2015 Tr. P. 4-5**

During the final hearing, Plaintiff attempted to show the trial court that Wife perjured herself but the trial court would not allow Plaintiff's line of questioning and would not allow

Plaintiff to present evidence that would prove Wife's perjury. Obstructing evidence and suppressing testimony in this manner is a violation of Plaintiff's right to be heard. During the final hearing the following dialogue took place;

> THE COURT: Mr. Lankford objected to the e-mails coming in on the grounds of relevance. How are these relevant to the issues in the divorce? **May 2, 2016 Tr. P. 247**

It should be noted that throughout the final hearing proceedings, it appeared as if the trial court cued off of Wife's counsel's unsubstantiated objections not as a matter of law, but as a suggestion to manipulate the proceedings to prevent Plaintiff's proof. This is just one of the more obvious examples. The dialogue continued as follows;

> MR. GENTRY: **Ms. Gentry has presented evidence and testified that the business was not profitable. These e-mails will show that she knows that the business is quite profitable and does very well, along with when we get into other valuation, there will be further evidence to show that as well, Your Honor.**
> THE COURT: She's testified that the business is profitable. The last question you asked her, she testified that the business was making a profit.
> MR. GENTRY: It's contradictory.
> MR. LANKFORD: We'll withdraw our objection on that. I wanted to make a point.
> THE COURT: **I may still have a problem that it's cumulative. She's not contesting that the business is profitable.** Did I misunderstand your testimony, Ms. Gentry?
> THE WITNESS: No. That's correct. Our last return showed a profit.
> THE COURT: Why do we need to get into this if she's saying that the business is profitable?
> MR. GENTRY: **During the March hearing, she communicated to the Court that the business was not profitable. And she deceived this Court and she didn't provide support.**
> THE COURT: That was more than two years ago. She's testifying today the business is profitable. So what are you trying to prove --

> MR. GENTRY: I think it was profitable two years ago as well, Your Honor.
> THE COURT: You can move on from this. If she's testifying that it's profitable, you don't need to prove that it's profitable. **May 2, 2016 Tr. P. 247 – 249**

Although the trial court assured Plaintiff he would be allowed the opportunity to cross examine Wife and prove her perjury, the trial court was plainly obstructing Plaintiff's testimony and evidence and manipulating proceedings in violation of Plaintiff's right to be heard.

## FEBRUARY 9, 2016 – GROSS CIVIL RIGHTS VIOLATION

In the below statement of facts, Plaintiff will evidence how the trial court violated Plaintiff's right to be heard in obstructing Plaintiff's evidence and refusing to allow Plaintiff any oral arguments whatsoever. The trial court even made several false statements about reading Plaintiffs motions, while the trial court's statements indicate that he did not read Plaintiff's pleadings.

At the beginning of a hearing on February 9, 2016, the following dialogue took place.

> MR. LANKFORD: Good morning, Your Honor. Brent Lankford on behalf of Ms. Gentry. Mr. Gentry has four motions on today's docket. We have three. Ours are relatively easy to depose of. I think we need to start with Mr. Gentry's motions.
> MR. GENTRY: First motion I'd like to discuss, Your Honor, opposing counsel --
> THE COURT: Hold on, Mr. Gentry. Which motions do you think you have, Mr. Gentry?
> MR. GENTRY: I have a list if that would be helpful for Your Honor.
> THE COURT: Sure. **February 9, 2016 Transcript P. 3-4**

In this opening dialogue, it is apparent that the trial court was not informed or aware of what motions were being heard. Opposing counsel, Mr. Lankford anticipates that the trial court is not informed regarding what matters are to be heard and states "Mr. Gentry has four motions

22

on today's docket. We have three." The trial court did not respond to opposing counsel in any way indicating he knew what matters were before the court.

The trial court's rather condescending question, "***Which motions do you think you have, …?***" indicates bias in that the trial court gives the impression it has no intention of hearing any of Plaintiff's motions or responses to Wife's motions, i.e. "*you may think you have motions to be heard, but I'm not going to hear them*". This becomes more apparent in the transcript dialogue evidenced below.

It is important to recognize that in the trial court accepting Plaintiff's listing of motions to be heard – and that consistent with Mr. Lankford's introduction, and consistent with the trial court's question about what motions Plaintiff "thinks he has"– the trial court was clearly not aware of what motions were to be heard, and apparently did not read Plaintiff's motions or responses to Wife's motions prior to the beginning of the hearing. **This is important to note because it substantiates the trial court's later apparent false statement, that he had read Plaintiff's motions and responses to motions.**

The trial court next indiscriminately granted Wife's Motion to Quash Subpoena to Kati Lohr. This ruling was made without hearing Plaintiff's arguments and apparently without the trial court having read Plaintiff's written response to Wife's motion to quash, in a violation of Plaintiff's basic right to be heard, further demonstrating a predisposition to rule without hearing arguments. Regarding this assertion by Plaintiff, the following dialogue took place.

> THE COURT: All right. I'm going to take these in the order Mr. Gentry has them listed. Wife has a motion to quash the husband's subpoena of Kati Lohr. That is granted.
> MR. GENTRY: Your Honor, you don't hear arguments on that?
> THE COURT: Do you know what the scope of the psychologist/client privilege is in Tennessee?

MR. GENTRY: **And this is what I'd like to explain to the Court. I'm not asking to violate privilege at all.**

THE COURT: What do you want?

MR. GENTRY: What I'm asking to testify is communication between Ms. Lohr and myself. **I'm not asking for any communication for any privileged material.**

THE COURT: What?

MR. GENTRY: Ms. Lohr sent me an e-mail. Pardon me?

THE COURT: I don't understand what you're asking for.

MR. GENTRY: **I would like Ms. Lohr to testify to an e-mail that she sent to me. It has nothing to do with privilege, Your Honor.**

THE COURT: What's the purpose of that e-mail?

MR. GENTRY: If I could have just a moment.

THE COURT: Just tell me.

MR. GENTRY: Can I --

THE COURT: No. See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else. So don't look for your papers. What is the purpose of the e-mail? Why would you want to get that into evidence?

MR. GENTRY: Ms. Gentry made a false statement saying -- it was a harassing statement to me, saying that I had a mental illness and that her counselor said that in years she's never met anybody with a mental illness as strong as mine. So I e-mailed Ms. Lohr and said did she possibly say something like this and Ms. Lohr responded no, she did not. This substantiates Ms. Gentry's off-the-cuff statements of making false statements. Ms. Gentry doesn't -- it's just a knee jerk reaction for her. And this will further substantiate similar off-the-cuff false statements that Ms. Gentry has made.

THE COURT: Your motion's granted, Mr. Lankford, on that one.

**February 9, 2016 Transcript P. 9-11**

In the above dialogue between Plaintiff and the trial court, there are several fairly obvious conclusions which can be drawn. (1) a further predisposition by trial court to rule without hearing argument, (2) that the trial court did not read Plaintiff's Response to Wife's Motion to Quash and, (3) a strong bias against Plaintiff.

Had the trial court read Plaintiff's response to Wife's motion as the court stated it had, the trial court would have known Plaintiff was not subpoenaing a witness to violate psychologist/client privilege. The trial court would have known that Plaintiff understood the "…scope of the psychologist/client privilege." and that Plaintiff's subpoena did not violate the applicable statute T.C.A. § 63-11-213. The trial court would have known about the email to which Plaintiff was referring and the trial court would have known Plaintiff's subpoena should not have been quashed. **The trial court's granting of Wife's motion to quash Plaintiff's witness subpoena indicates an intentional obstruction or suppression of evidence by the trial court and a violation of Plaintiff's right to be heard.**

As noted on the face of Plaintiff's subpoena, Plaintiff stated in the subpoena "Direct Examination Questions will only pertain to statements or correspondence made or sent to Mr. Gentry." Wife's motion to quash this witness subpoena was plainly an obstruction of evidence and the trial court should have denied such a motion.

Lastly, the trial court's statement, "*See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else.*" This statement demonstrates bias at several levels.

First, in reading Plaintiff's Response to Wife's Motion to Quash, it is evident that Plaintiff **does understand** the law and applicable statute. Such a statement by the trial court made it impossible for Plaintiff to present *any* legal arguments in that the trial court's statement here invalidates any legal argument presented by Plaintiff as has been the true time and time again during these proceedings.

25

Next, this remark by the trial court is a perplexing non sequitur statement that demonstrates bias and a failure to recognize Plaintiff's basic rights in a judicial proceeding. ***It is Wife's motion to quash that is causing this matter to be heard by the court – not Plaintiff***. Plaintiff was simply trying to preserve his evidence and testimony, necessary in making his case in the final hearing and evidencing Wife's harassment of Plaintiff in violation of statutory injunction.

Any Judge or legal professional reading Plaintiff's response to Wife's motion to quash, can plainly see that Plaintiff's arguments and statutory analysis are a reasonable and legally substantiated response to Wife's motion to quash. It is illogical that the trial court accuses Plaintiff of wasting the court's time except in that it suggests bias. The trial court, in its appearance of bias, is simply assigning blame for Wife's baseless motion to quash, onto Plaintiff's shoulders which does not follow basic logic.

On a final note regarding this statement by the trial court, throughout these proceedings, the trial court consistently interrupted and did not allow Plaintiff the fair opportunity to present his evidence and did not allow Plaintiff to present his arguments. Initially, Plaintiff had thought perhaps, this was due to being on the 8AM docket reserved for motions expected to be resolved in 10 minutes or less. To ensure time on the docket to be properly heard, Plaintiff specifically scheduled his motions to be heard on the 9AM docket. Scheduling his motions on the 9AM docket verses the 8AM docket necessitated having to wait an additional several weeks to be heard. Plaintiff should have the same right to be heard as everyone else in the courtroom. The trial court's statement, "*see all these people*" shows strong possible bias against Plaintiff in that, Plaintiff does not have the same right to be heard. It is painfully obvious to Plaintiff now, that due to possible bias, the trial court appears to have no interest in fairly hearing any matters presented by Plaintiff. It becomes quite obvious in the further analysis below, of the trial court's likely bias and refusal to allow Plaintiff to be fairly heard.

A few minutes later, the following dialogue took place;

THE COURT: All right. Wife's motion to clarify judgment amount garnishment. That's just there was an additional amount?

MR. LANKFORD: Yes, Your Honor. We came forward on that. There's a levy. Mr. Gentry's motion represented one number. We haven't received the answer from the garnishee. What I would point out to the Court is Mr. Gentry was ordered to pay $800, 400 on the first Monday of each month starting in January. He's not done that. I believe he's paid $194.17. We'd ask that order reflect that the garnished amount of $4,181.21 from US Bank be released to Ms. Gentry and Mr. Gentry be ordered to pay $605.83 to catch up what he should have paid and that he continue paying $400 the first Monday of each month until final hearing. Those monies will be held by the clerk, but not the lump sum, the 4,000. That will be paid out.

MR. GENTRY: Your Honor, if you would, my motion on my financial position, you'll see I absolutely cannot afford it. I would ask the Court to take a moment and read my response to their motion. These attorney fees should have never been awarded.

THE COURT: All right. **That motion is granted.**
**Wife's motion to quash any and all subpoenas, that's granted, too**. And your supplemental deadline is set. No more subpoenas to -- is there anything else you think you need from her that you don't have, Mr. Gentry?

MR. GENTRY: Pardon me, Your Honor?

THE COURT: Is there anything else from her that you think you need?

MR. GENTRY: **You know, Your Honor, I think that this Court just isn't going to hear me on that matter. You rule before I make my arguments. And I would like to state that for the record, that with the Court not hearing any arguments from myself that the Court just disregards me and issues a ruling. I think just to make --**

THE COURT: There's going to be one of us that talks at a time. It's not going to be you. It's going to be me. **I read everything.** I'm as patient with you as I know how to be. **You don't understand. You're not trained as a lawyer. You don't understand how to plead things.** A lot of times the things that you ask for are things that you really didn't have the right. **What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I**

read them.  I don't need to hear the same thing that I've already read.

MR. GENTRY: Just a quick question, Your Honor.  **So you've read my response to their motion to rule on the garnishment?**

THE COURT: **Yes.**

MR. GENTRY:  So you would note that I'm without representation.  Obviously, I'm not doing very well at it, and it's because of what has happened during the pendency of this hearing.  It's not my fault that I should be without representation.  If you would have read my response to their motion, it's a precedence set more than 150 years ago that a spouse should not be without representation.  And yet here I am –

THE COURT: Done.  We're done.  **February 9, 2016 Transcript P. 11-14**

Plaintiff would like to emphasize for this Honorable Court, as substantiated in all of the above analysis and transcript dialogue, that obviously **the trial court appears not to have read any of Plaintiff's Motions or Responses to Motions** to be heard on February 9, 2016. **Plaintiff recognized this fact during the hearing but out of great respect for the office of the judiciary, Plaintiff did not publicly reference possible false statements by the court in a public forum.**

Had the trial court read Plaintiff's, RESPONSE TO WIFE'S MOTION TO CLARIFY THE JUDGEMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT, it seems unlikely that any judge would grant Wife's motion except out of bias and judicial reprisal.

Without any discussion whatsoever, even from opposing counsel, the trial court grants Wife's motion to quash all subpoenas with the statement "*Wife's motion to quash any and all subpoenas, that's granted, too*".  The trial court ruled so quickly and also because of Plaintiff's hearing impairment, Plaintiff didn't even understand what happened.  Plaintiff is hearing impaired caused by his military service and exposure to friendly fire.  Turning to opposing counsel, Plaintiff asked;

MR. GENTRY:  We haven't addressed your motion to quash all subpoenas, have we? **February 9, 2016 Transcript P. 15**

The trial court then interjected and the following dialogue then took place;

> THE COURT: We just did.
> MR. GENTRY: **Your Honor, the reason that I filed this is because Ms. Gentry --**
> THE COURT: **Stop. He filed the motion. You didn't file the motion. He filed a motion to --**
> MR. GENTRY: **Don't I get to respond?**
> THE COURT: **No. I read your responses. February 9, 2016 Transcript P. 15**

How possibly can Plaintiff expect a fair hearing under these circumstances where the trial court rules so fast Plaintiff isn't even aware of what is happening? The trial court's lighting fast ruling on the matter of quashing all party subpoenas demonstrates an extreme bias against Plaintiff and a plain violation of his right to be heard.

In Leighton v. Henderson, 414 SW 2d 419 - Tenn: Supreme Court 1967, the Supreme Court of Tennessee included the following in its opinion;

> **When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification.** "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial." Leighton, 414 S.W.2d 419, 420 (Tenn. 1967). In *Leighton*, the Tennessee Supreme Court reversed and remanded for new trial a case in which the trial court stated, among other things, "*I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition....*" *Id.* The *Leighton* court quoted with approval language in *In Re Cameron:* Beyond question, **it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice.** *Id.* at 421 (quoting *In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 77 (1912)). Often parties allege that comments made by the judge demonstrate bias or prejudice. **An expression of opinion of the merits of the case prior to hearing the evidence is indicative of bias.** *Kail v. State,* 528 N.E.2d 799, 804 (Ind. App. 1988). **Remarks which suggest**

that the judge has taken a position favorable or unfavorable to a party also indicate bias. *LaBow v. LaBow,* 13 Conn. App. 330, 537 A.2d 157, 164 (1988); *Brown v. St. George Island, Ltd.,* 561 So.2d 253, 257 (Fla. 1990) (judge who refused to admit affidavit stating, "I wouldn't believe him anyway," should be disqualified).

As evidenced above and further substantiated in the immediately following paragraphs below, the trial court appears to not have read any of Plaintiff's motions or responses to motions contrary to the trial court's statements that he did read them. How can a litigant expect a fair hearing when a judge issues rulings without hearing arguments from either side, and without reading pleadings?

Furthermore, any judge or legal professional who would have actually read Plaintiff's response to Wife's motion, can plainly see Wife's motion to quash should be dismissed. **How can a judge suppress evidence required in discovery? How can a judge suppress evidence of a spouse hiding assets and failing to disclose bank and credit card accounts that should have been disclosed in discovery?** In reading Plaintiff's RESPONSE TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL, it is obvious that Wife's motion to quash any and all subpoenas should have been denied.

In the trial court granting Wife's motion, it gives the appearance that the trial court did not read Plaintiffs response - again contrary to his statements in open court or the appearance of bias and a suppression or obstruction of Plaintiff's evidence. This ruling by the trial court suggests extreme bias and it further suggests a violation of Plaintiff's basic right to be heard.

In his **SUPPLEMENTAL RESPONSE** TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS..., Plaintiff specifically referenced several statutes and rules of procedure demonstrating the illegality of such a motion as follows;

Case 3:16-cv-02617   Document 6   Filed 10/19/16   Page 30 of 38 PageID #: 76

2. **Wife's Motion cannot legally be directed at "any and all" subpoenas**. This amounts to an obstruction of evidence in that a blanket motion like this restricts Husband from obtaining evidence necessary to his case that may come to light in the future especially in regards to Husband's current pending subpoena that is requesting documents on newly discovered accounts that wife intentionally failed to disclose in contempt of court.

3. Husband asserts Wife's intent with her motion to quash is aimed at preventing proper disclosure of newly discovered accounts that Wife failed to properly disclose in discovery.

5. Rule 45.08 of the Tenn. Rules of Civil Procedure, Duties in Responding to Subpoena states;

> On motion to compel discovery or to quash, **the person whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost**. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause.

6. For Wife to provide the requested information, it is a simple matter of logging into various accounts and servers and printing the requested evidence. **Certainly, this is not an "undue burden" on wife.**

7. Clearly the Rules of Civil Procedure provide for discovery through request for production of documents (Rule 26) and subpoenas (Rule 45) to facilitate litigants being able to properly present their cases. A blanket motion such as Wife's motion in this instance, is in direct conflict with these provisions.

8. Wife's Motion also asks the court to issue a ruling in contradiction to **Tenn. Code Ann. § 24-2-107 which states;**

> **If any local rule of court conflicts with the provisions of Rule 45, the provisions of Rule 45 shall prevail… … and the judge shall punish the refusal to respond to subpoenas in accordance with the provisions of such rule**.

At the end of the hearing, the following dialogue took place;

> THE COURT: Review financial position and review credibility. Mr. Lankford, **is there anything that you see in any of those motions that shouldn't be addressed at the final hearing**?
>
> MR. LANKFORD: No, Your Honor. And the other thing, Your Honor, I just want to point out that we have two days for this. Mr. Gentry has attached over a hundred pages of spreadsheets. I have serious concern if he plans to go through that at final hearing in two days.
>
> THE COURT: It will be done in two days.
>
> MR. LANKFORD: I'm hoping. But no, Your Honor, nothing that can't be addressed at final hearing.
>
> THE COURT: You'll do the orders, Mr. Lankford.
>
> MR. LANKFORD: And I'd ask the Court to reserve attorney fees.
>
> THE COURT: We'll do. All right. Thank you. **February 9, 2016 Transcript P. 16**

There are two disturbing conclusions to draw from this dialogue. First, in asking the question, "*Review financial position and review credibility. Mr. Lankford, is there anything that you see in any of those motions that shouldn't be addressed at the final hearing?*" If, as the trial court has stated, that he read "everything", why would he ask opposing counsel this question? Plaintiff asserts, the trial court asks this question because he has no knowledge of the content of those motions despite his several statements that he did read Plaintiff's motions and responses to motions. This substantiates the reasonable conclusion that the trial court made false statements asserting that he had read Plaintiff's motions and responses to motions. The trial court stated;

> **"I read everything. So I've read your responses". February 9, 2016 Transcript P. 13**

> **What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I read them. I don't need to hear the same thing that I've already read. February 9, 2016 Transcript P. 13-14**

MR. GENTRY: Just a quick question, Your Honor. **So you've read my response to their motion to rule on the garnishment?**
THE COURT: **Yes. February 9, 2016 Transcript P. 14**

MR. GENTRY: Don't I get to respond?
THE COURT: **No. I read your responses. February 9, 2016 Transcript P. 15**

Also, it seems incredibly biased of the court to ask Wife's counsel about the validity of Plaintiff's motion. This reflects the fact of a one-sided case, which has been evident in this case since the inception of these proceedings. **No litigant can hope for a fair hearing in a one-sided trial.**

Meaning no disrespect to the office of the judiciary, it is quite obvious that the trial court likely made false statements during official proceedings in a poorly veiled attempt to hide the court's violation of Plaintiff's right to be heard.

If the trial court would have read Plaintiff's MOTION TO REQUEST THE COURT TO REVIEW FINANCIAL POSITIONS OF PLANTIFF AND DEFENDANT, he would know that his garnishment ruling was causing Plaintiff great financial harm. This ruling forced Plaintiff to pay bills late, and destroyed his financial credit rating which affects his ability to earn a living. Plaintiff is in such fear of judicial reprisal that he anticipated the trial court would incarcerate him if he didn't make monthly payment of attorney fees to escrow with the court even though Plaintiff cannot afford his own counsel and cannot afford to pay his own bills. This behavior by the trial court caused great emotional and financial harm to Plaintiff.

The below dialogue between opposing counsel and the trial court indicates Plaintiff will not be able to present his proof at trial. Effectively, the trial court is stating, 'I don't care what evidence he has, the hearing will last only two days'. This statement by the trial court also

demonstrates a possible bias and a predisposition to issue a ruling without hearing fair arguments or viewing evidence from both sides.

> "MR. LANKFORD: No, Your Honor. And the other thing, Your Honor, I just want to point out that we have two days for this. Mr. Gentry has attached over a hundred pages of spreadsheets. I have serious concern if he plans to go through that at final hearing in two days.
> THE COURT: **It will be done in two days. February 9, 2016 Transcript P. 16**

When one considers, (1) the trial court did not know what motions were on the docket, (2) when one considers the trial court did not know Plaintiff's arguments against quashing the Kati Lohr subpoena and that he didn't know about the email referenced, (3) when one considers the trial court suppressed or obstructed Plaintiff's subpoenaed evidence, (4) when one considers his granting Wife's motion to clarify despite Plaintiff's lack of financial resources, (5) when one considers his question to opposing counsel about Plaintiff's motions to review financial positions and review credibility, the only conclusion that can be drawn is that the trial court appears to have falsely stated he had read Plaintiff's motions or responses to motions and that the trial court possibly made these false statements to hide possible violation of Plaintiff's right to heard.

## May 3, 2016 - CIVIL RIGHTS VIOLATION

During the final hearing, Plaintiff attempted to evidence Wife's attempt at subordinated perjury. Plaintiff was hopeful to testify and enter into evidence a Facebook chat with his former wife from another marriage that would show that Wife in this case asked his former wife to make false statements under oath, which is subordination of perjury as well as harassment and violation of statutory injunction.

As noted in the following dialogue, the trial court refused this testimony and evidence

suggesting bias. Plaintiff would further note for this Honorable Court that the final hearing was

scheduled for two days with each day scheduled to end around 4PM. On the same last day of

the hearing as the following dialogue took place, the final hearing ended around 2 or 2:30PM,

approximately two hours early.

> MR. GENTRY: I did have a section in here where Ms. Gentry was
> attempting to subordinate perjury from my former wife.
> THE COURT: You can take that up with the district attorney. This isn't
> a criminal case.
> MR. GENTRY: Well, it's a violation of statutory injunction.
> THE COURT: But the issues for the divorce, we have to pare down the
> issues for the divorce today. **May 3, 2016 Tr. P. 359**

The above dialogue suggests the trial court is continuing to diligently protect Wife from

any evidence showing her misconduct, even her criminal conduct. In obstructing Plaintiff's

evidence and testimony, Judge Thompson was plainly violating due process and Plaintiff's right

to be heard.

## October 27, 2015 - CIVIL RIGHTS VIOLATION

During a hearing on October 27, 2015, due to a scheduling error by the clerk's office,

Plaintiff's Motions were not properly scheduled on the docket. The trial court clerk's office

had scheduled to be heard, Defendant's Motion to Compel Health Insurance and Life Insurance

and it was also communicated by the clerk's office that Defendant's arguments for a Rule 9

Interlocutory Appeal would be heard. It is worth noting that even in something as simple as

whether a Notice of Hearing was properly filed, the trial court immediately assumed Plaintiff

failed to properly file a Notice of Hearing. This exchange between the court and Defendant is

important in that together with later dialogue, the court demonstrates a pattern of a predisposition to completely disregard Defendant's arguments, even before hearing them. The following dialogue took place;

> The Court: You never filed a notice of hearing.
> Mr. Gentry: I filed a notice of appeal, yes, sir.
> The Court: A notice of hearing on this motion. You never filed a notice of hearing.
> Mr. Gentry: I did file a notice of hearing.
> The Court: Well, it's not – no you didn't. It's not on the docket. Your notice of appeal –
> Mr. Gentry: I have a confirmation email with me sir –
> The Court: It's not an email. It's a notice of hearing. It's a separate written document. Do you have a separate written document?
> Mr. Gentry: Yes, sir, I have a notice of hearing right here.
> The Court: Let's see it. I'm not hearing it today, but let me see what happened in the clerk's office. **Tr. P. 5**

This may seem an innocuous exchange, but it demonstrates the trial court's predisposition to disregard Plaintiff's statements. Without asking if Defendant has any evidence to support his statement, the trial court states *"You never filed a notice of hearing"* After presenting a copy of the Notice of Hearing and a copy of an email from scheduling, the court recognized the error was caused by the clerk's office and not by Plaintiff **Tr. 7)**

**The trial court's bias and animosity toward Defendant becomes evident and obvious in the trial court's next statement and is of critical importance.**

> The Court: **By the way, I'm treating your request for an appeal as a request for an interlocutory appeal and that's denied.** So you can't file an appeal until the case is over unless there's a unique question of law. MR. GENTRY: Actually, sir, according to Rule 10 I can file an interlocutory appeal --
> THE COURT: I know, but you have to get my permission and I'm denying that. **Tr P. 6**

In making the above statement "*By the way...,* without hearing any arguments whatsoever, and without reviewing any facts at issue, the trial court wantonly denied Plaintiff permission for interlocutory appeal. Also, the trial court was apparently not paying attention to, or doesn't understand and interrupts Plaintiff stating he has to have the court's permission to file a Rule 10 appeal which is not correct. A Rule 10 Extraordinary Appeal does not require permission of the trial court as does a Rule 9 Interlocutory Appeal.

When the trial court made the statement, "*By the way, I'm treating your request for an appeal as a request for an interlocutory appeal and that's denied.*", this is ***exactly*** (emphasis added), the same kind of statement as" "*I don't care what proof is in the record...* " made by the court in the Leighton case referenced above. Effectively, in this case, the trial court is stating 'I don't care what the arguments are', **'I don't care what the evidence shows' --- Motion Denied**. It is quite obvious in the trial court's statement, that he has "prejudged" and "already decided" Defendant's Rule 9 request. It is further evident that the trial court has taken an unfavorable position toward Plaintiff indicating actual bias.

The same is true of another matter, the trial court made a ruling denying Plaintiff's trial court motion for Sanctions Pursuant to Rule 34A.02 Spoliation of Evidence while refusing to allow evidence. This shows a clear pattern of bias and a predisposition to prejudge matters, a complete refusal to hear arguments and a complete refusal to allow presentation of evidence.

In addition to the above statement of facts, Plaintiff will disclose in discovery and at trial additional violations of his constitutional rights. Plaintiff's General Allegations,

37

Statements of Fact, United States Code and federal case law precedence demonstrate and evidence a cause of action and basis for Plaintiff's claim for relief.

**WHEREFORE PREMISES CONSIDERED, PLAINTIFF PRAYS UPON THE COURT TO ISSUE EQUITABLE RELIEF AS FOLLOWS:**

1. For this complaint to be filed and causing a summons to be issued upon the Defendant;

2. For a jury to be empaneled, try the facts of this case and render damages consistent;

3. For all judgements issued and rendered by the Defendant in the Circuit Court for Sumner County Case No. 2014CV393, with the exception of the single order declaring the parties divorced, to be made null and void.

4. Issue injunctive relief commanding Defendant to recognize and enforce the constitutional rights of citizens subject to his jurisdiction;

5. Issue declaratory relief as this Court deems appropriate and just;

6. Award Plaintiff his costs of litigation;

7. For such general and further relief as this Court deems appropriate and just and to which Plaintiff is entitled.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net