FILED
2016 JAN -3 AM 11:21
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
CIVIL RIGHTS DIVISION**

**JOHN ANTHONY GENTRY,**
Plaintiff

vs.

**THE HONORABLE JUDGE
JOE H THOMPSON
CIRCUIT COURT JUDGE**
Defendant

**CASE NO. 3:16 -cv-02617**
Judge Trauger/Brown

**JURY DEMANDED (12)**

---

## PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND MOTION TO STRIKE

---

Pursuant to Fed. R. Civ. P. Rule 72 (b)(2), Plaintiff hereby respectfully objects to Magistrate Judge Brown's "*Report And Recommendation*" in its entirety. Plaintiff's "specific written objections" are stated below with particularity.

Pursuant to Fed. R. Civ. P. Rule 12 (f), and for reasons stated and evidenced below, Plaintiff hereby respectfully requests that Magistrate Judge Brown's *"Report And Recommendation*" be stricken from the record in its entirety,

Plaintiff's Objection to Magistrate Judge Brown's "*Report And Recommendation*" is filed timely. Magistrate Judge Brown's "*Report And Recommendation*" was entered into the record on December 28, 2016 (Docket Entry 20). Pursuant to Fed. R. Civ. P. Rule 72 (b)(2), "*Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations*". Plaintiff's

Objection is filed on January 3, 2017, just six days after the Magistrate Judge's "*Report and Recommendation*", and is therefore timely filed.

**Table of Contents**

INTRODUCTION .......... 2
LEGAL DISCUSSION - Standard of Review .......... 5
De novo .......... 5
Abuse of Discretion .......... 7
Rooker-Feldman Doctrine Not Applicable In This Case .......... 7
Prerequisites of Rooker-Feldman Doctrine Not Satisfied .......... 9
Defendant's False Assertion That Rooker Feldman Bars Jurisdiction Makes The U.S.C. Unenforceable .......... 12
The Defendant Is Not Entitled To Absolute Judicial Immunity .......... 16
The Eleventh Amendment Does Not Bar A Claim for Relief Against Defendant In His Official Capacity .......... 22
U.S. District Court, Middle District Of TN Has Jurisdiction .......... 24
Plaintiffs Allegations Against Defendant Are Not Barred by Statute of Limitations .......... 25
Conclusion .......... 26

## INTRODUCTION

Plaintiff's "*Amended Complaint*" and cause of action are not to challenge state court proceedings and do not complain of bias. Plaintiff's complaint and cause of action are for obvious, transcript evidenced violations by Defendant, of Plaintiff's Right of Due Process, which includes a right to be heard, that is guaranteed by the XIV Amendment of The U.S. Constitution. Pursuant to Title 42 U.S. Code § 1983, judges do not have immunity for violations of constitutional rights.

Defendant's motion to dismiss suggests that judges are not required to recognize, or abide by the rights guaranteed to U.S. Citizens in The U.S. Constitution, and that the federal courts have no jurisdiction over matters pertaining to constitutional rights violations which is untrue. Such a notion suggests that states and state judges can abrogate the constitutionally guaranteed rights of U.S. Citizens at whim, and that when such violations occur, U.S. Citizens are afforded no protection by the federal government and no form or redress whatsoever. Support of such a notion would result in absolute chaos and a loss of rights guaranteed by our federal constitution.

Plaintiff stated the facts giving rise to his cause of action with particularity in his "*Amended Complaint*" (Docket Entry 6, P. 9 – 37). In his "*Amended Complaint*", Plaintiff referenced certified court reporter transcripts, that prove beyond any doubt, that the Defendant repeatedly refused to allow Plaintiff to speak a single word of oral argument in defense of his claims on multiple occasions, and in plain violation of Plaintiff's Right of Due Process guaranteed by Amendment XIV § 1 of the U.S. Const.

In his "*Amended Complaint*", Plaintiff referenced certified court reporter transcripts, that prove beyond any doubt, that Defendant quashed and obstructed Plaintiff's subpoenaed evidence and testimony without having read Plaintiff's written motions and responses to motions. This, while also refusing to allow Plaintiff to speak a single word of oral argument, is not only in violation of Tenn. R. Civ. P., but also a malicious violation of Plaintiff's Right of Due Process guaranteed by Amendment XIV § 1 of the U.S. Constitution.

The Magistrate's characterization of Plaintiff's complaint is a complete misrepresentation of, and effectively ignores the facts of Plaintiff's cause of action. Plaintiff's Amended Complaint

Case 3:16-cv-02617 Document 21 Filed 01/03/17 Page 3 of 28 PageID #: 149

(Docket Entry 6) is unnecessarily and unjustly belittled, and characterized with demeaning terms, suggesting that Plaintiff's Complaint (Docket Entry 6) and Memorandum Response (Docket Entry 17) are not well-written legal documents which is untrue.

In his Amended Complaint (Docket Entry 6, p. 9 – 37), Plaintiff organized his Statement of Facts in order of severity of due process violations rather than chronological order. Plaintiff intentionally organized his pleadings in this manner so as to present his facts in a more meaningful manner. Statements such as "*The Plaintiff then backtracks*" and "*The Plaintiff then again backtracks*" appear to be demeaning characterizations of Plaintiff's Amended Complaint, and as such are unnecessary.

The magistrate judge's further characterizations; "*what appears to be a final hearing*", "*Defendant was biased and should have disqualified*", "*contends that the Defendant showed his bias*", and other similar statements are all mischaracterizations of Plaintiff's complaint. Plaintiff's complaint is not that the Defendant was biased (although this is most certainly true); Plaintiff's detailed statements of fact are clear and well stated, evidenced by certified court reporter prepared transcripts, and show a clear cause of action for repeated and multiple violations of Plaintiff's constitutionally guaranteed right of due process. The facts of this case, and supporting evidence are undeniable and irrefutable.

> **Arguments which rely upon** racial, religious, ethnic, political, economic or **other prejudices** of the jurors **introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law**.
> State v. Goltz, 111 SW 3d 1 - Tenn: Court of Criminal Appeals 2003

The facts plainly stated in Plaintiff's "*Amended Complaint*" show beyond any doubt, that the Defendant blatantly and obviously violated Plaintiff's Right of Due Process. Plaintiff's arguments of law in his memorandum response (Docket Entry 17), prove, that Plaintiff's complaint should not be dismissed.

## LEGAL DISCUSSION - Standard of Review

**DE NOVO**

Magistrate Judge Brown correctly cited Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir.2008) and that motions to dismiss on the pleadings under Fed. R. Civ. P. 12(c) are reviewed *de novo* and the standard of review is the same as for a motion under Rule 12(b)(6) for failure to state a claim.

Pursuant to Fed. R. Civ. P. 12(d), all parties must be given a reasonable opportunity to present all material that is pertinent to the motion. Specifically, Fed. R. Civ. P. 12(d) states;

> (d) Result of Presenting Matters Outside the Pleadings. If, **on a motion under Rule 12(b)(6)** or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. **All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion**.

Pursuant to Rule 72, Notes of Advisory Committee on Rules – 1983, which states;

> Implementing the statutory requirements, **the rule requires the district judge to whom the case is assigned to make a de novo determination of those portions of the report, findings, or recommendations to which timely objection is made. The term "de novo" signifies that the magistrate's findings are not protected by the clearly erroneous doctrine**, but does not indicate that a second evidentiary hearing is required. See *United States v. Raddatz*, 417 U.S. 667 (1980). See also Silberman, *Masters and Magistrates Part II: The American Analogue*, 50 N.Y.U. L.Rev. 1297, 1367 (1975).

Plaintiff hereby moves this Honorable Court for *de novo* review of Plaintiff's "*Amended Complaint*" (Docket Entry 6.) and "*Plaintiff's Memorandum Response To Defendant's Motion To Dismiss Amended Complaint Judge Joe H. Thompson And Plaintiff's Memorandum Response to Defendant's Memorandum Of Law In Support of Motion To Dismiss Amended Complaint Judge Joe H. Thompson*" (Docket Entry 17).

Pursuant to Fed. R. Civ. P. 72 (b)(1), since an initial evidentiary proceeding was not conducted, Plaintiff hereby moves this Honorable Court to conduct such an evidentiary hearing so that Plaintiff is fairly heard, and is able to present his evidence and oral arguments for the Court's consideration, so as to ensure that a just and fair decision is made with proper and full consideration of the facts and arguments of law.

In the case, Goldberg v. Kelly, 397 US 254 - Supreme Court 1970, our Supreme Court stated the following;

> **"The fundamental requisite of due process of law is the opportunity to be heard."** Grannis v. Ordean, 234 U. S. 385, 394 (1914). **The hearing must be "at a meaningful time and in a meaningful manner."** Armstrong v. Manzo, 380 U. S. 545, 552 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, **and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.** These rights are important in cases such as those before us, **where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases**. Goldberg v. Kelly, 397 US 254 - Supreme Court 1970

Plaintiff respectfully requests this Honorable Court to grant Plaintiff's separate written motion to set an evidential hearing.

**ABUSE OF DISCRETION**

Plaintiff directs this Honorable Court's attention to the language of Rule 72 (b)(1) which states;

> (b) Dispositive Motions and Prisoner Petitions.
> (1) *Findings and Recommendations.* **A magistrate judge must promptly conduct the required proceedings when assigned**, without the parties' consent**, to hear a pretrial matter dispositive of a claim or defense** or a prisoner petition challenging the conditions of confinement. **A record must be made of all evidentiary proceedings** and may, at the magistrate judge's discretion, be made of any other proceedings.

Plaintiff asserts to this Honorable Court that the operative word in this rule is to "***hear***" a pretrial matter dispositive of a claim. With all due respect to Magistrate Judge Brown, Judge Brown's "*Report and Recommendation*" was issued in advance of satisfying the requirements of Rule 72 (b)(1) and an evidentiary hearing should have been conducted prior to issuance of his recommendation to the District Court Judge. Plaintiff should have been provided an opportunity to present his oral arguments and evidence before issuance of the Magistrate's "*Report and Recommendation*". Although Plaintiff referenced certified court reporter transcripts in his complaint, Plaintiff should have been provided the opportunity to present this evidence to the court for its consideration and authentication of credibility.

**ROOKER-FELDMAN DOCTRINE NOT APPLICABLE IN THIS CASE**

Meaning no disrespect, Magistrate Judge Brown incorrectly agrees with Defendant that this Court lacks jurisdiction according to the Rooker-Feldman Doctrine which states; "*Only the United States Supreme Court has jurisdiction to correct state court judgement*". With all due respect to Magistrate Judge Brown, the Rooker-Feldman Doctrine is wholly inapplicable in this

matter for several reasons. First, none of prerequisites of Rooker-Feldman are satisfied in the present matter and therefore the doctrine is not applicable. Second, application of this Doctrine precludes any and all complaints filed under Title 42 U.S.C. §1983 and makes Title 42 U.S.C. §1983 and much of the U.S.C. unenforceable, a notion that cannot be true.

Magistrate Judge brown cites, Hutchinson v. Lauderdale County, 326 F.3d 747, 755-56 (6th Cir. 2013) and represents the Sixth Circuit's opinion that, Rooker-Feldman is applicable, even when "a specific grievance that the law was invalidly, even unconstitutionally, applied to Plaintiff's particular case" which is untrue. Plaintiff first directs this Court's attention to ¶ 755 of this case which states;

> The Rooker-Feldman doctrine provides that inferior federal courts lack jurisdiction to **review the final judgments of state courts**. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)

According to Magistrate Judge Brown's own citation, the Rooker-Feldman doctrine is not applicable to the present matter. As further argued in detail below, the Rooker-Feldman doctrine is not applicable when state court proceedings are still ongoing which is true in this case. Furthermore, Plaintiff is not seeking review of final judgements of the state court. **Plaintiff is seeking redress for malicious violations of his constitutional right of due process.**

Next, Plaintiff directs this Court's attention to the same opinion and paragraph where the Sixth Circuit Court of Appeals referred to the Seventh Circuit's opinion as follows;

> In order to determine the applicability of the Rooker-Feldman doctrine, **the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.** If the injury alleged

> resulted from the state court judgment itself, Rooker-Feldman directs that the lower federal courts lack jurisdiction. **If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, ...** res judicata may apply, **but Rooker-Feldman does not....**

Plaintiff is not claiming injury from the state court judgement itself. Plaintiff's complaint and cause of action could not be more clear. Plaintiff is complaining of Defendant's malicious violations of Plaintiff's constitutionally guaranteed right of due process.

In this same case, the Sixth Circuit Court of Appeals goes on to say;

> **We conclude that the Rooker-Feldman doctrine has no application here. Plaintiffs do not pursue a federal claim alleging injury caused by the state court, and under the Catz test their federal claim is not inextricably intertwined with the state-court judgment.** Catz, 142 F.3d at 293. Applying the general guidelines the Seventh Circuit has adopted, we have here a plaintiff who is not satisfied with the results of its state court action and simply seeks a second bite at the apple in federal court-an action **inappropriate for a Rooker-Feldman bar** but barred nonetheless under the doctrine of res judicata. Garry, 82 F.3d at 1365-67.

Meaning no disrespect whatsoever to Magistrate Judge Brown, but his own citation proves that the Rooker-Feldman Doctrine does not apply in the present matter. Res obviously also does not apply either, as a final judgement has not been rendered in state court proceedings.

**Prerequisites of Rooker-Feldman Doctrine Not Satisfied**

As stated in Plaintiff's Response to Motion to Dismiss (Docket Entry 17 P. 6-8) and further substantiated herein; the prerequisite to application of the Rooker -Feldman doctrine is that, it is confined to cases complaining of injuries caused by state-court judgements rendered **before** the district court proceedings commenced. Plaintiff's divorce case in the underlying litigation is **still ongoing**. In fact, at the time of writing this memorandum, underlying litigation

is currently ongoing. Therefore, the underlying proceedings have not yet concluded and Rooker-Feldman doctrine is wholly inapplicable. Plaintiff's assertion that Rooker-Feldman in inapplicable is affirmed in the case, Kircher v. City of Ypsilanti, 458 F. Supp. 2d 439 - Dist. Court, ED Michigan 2006. In this case, the U.S. District Court, E.D. Michigan, Southern Division's opinion states the following;

> The recent decision in Exxon Mobil, however, **highlights an important prerequisite to the application of Rooker-Feldman that is lacking in the present case. As this Court recently observed,** Exxon Mobil holds that **"[t]he Rooker-Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."** Kawecki ex rel. Marlowe v. County of Macomb, 367 F.Supp.2d 1137, 1142 (E.D.Mich.2005) (quoting Exxon Mobil, 125 S.Ct. at 1521-22).
> **The doctrine is not applicable, in contrast, where "there is parallel state and federal litigation," even if a final judgment is entered in state court while the federal suit is still pending**. Kawecki 367 F.Supp.2d at 1142 (quoting Exxon Mobil, 125 S.Ct. at 1526).
> As is evident from the foregoing account of the state court litigation, most or all of the underlying state court suits involving Plaintiffs three Ypsilanti properties were still ongoing at the time this federal action was commenced. **Indeed, with regard to the Cross Street property and the Thompson Building, the Michigan Court of Appeals had recently issued a decision reversing in part Judge Shelton's rulings with respect to the Thompson Building and ordering further proceedings as to both this and the Cross Street property.** Under these circumstances, **where the three state court actions cited in Plaintiffs complaint had yet to reach their conclusion at the time this federal suit was commenced, and where at least some state court proceedings remain pending even as of the present date, the Rooker-Feldman doctrine does not mandate the dismissal of this case for lack of subject matter jurisdiction**. Kircher v. City of Ypsilanti, 458 F. Supp. 2d 439 - Dist. Court, ED Michigan 2006 at 450

As affirmed by Michigan U.S. District court, "***where at least some state court proceedings remain pending even as of the present date, the Rooker-Feldman does not mandate the dismissal of this case for lack of subject matter jurisdiction***." Plaintiff, further points out that the Michigan U.S. District Court specifically referenced appellate court proceedings. Appellate proceedings are still ongoing in the underlying litigation to this case, so therefore, the Rooker-Feldman doctrine is inapplicable, and Defendant's argument, fails completely.

When examining proper application of this doctrine, the present matter before the court in this cause of action, is not "inextricably intertwined with the claim asserted in the prior state court proceedings." The underlying litigation to this case was a complaint for divorce. Plaintiff's cause of action in the present matter is a completely different cause of action for malicious and obvious violations of due process.

Plaintiff's case is not "challenging the constitutionality of state law". Nowhere in Plaintiff's Amended Complaint does he challenge the constitutionality of state law.

This case does not grieve "that the law was invalidly or unconstitutionally" applied to Plaintiff's case. **Plaintiff's Amended Complaint and cause of action is for violations of due process, for which the facts are clear, obvious, and not denied**. The Magistrate Judge's Report incorrectly states "Plaintiff's request for relief would challenge the correctness of the decisions in that case" which is not true. Plaintiff is not complaining of the rulings and is also properly addressing the many erroneous and malicious rulings in state appellate court. **Plaintiff is complaining of the defective process and violations of constitutional rights. The**

**Defendant's perversion of the entire process that led to the rulings issued by the Defendant, makes those rulings invalid, null and void.** The facts and evidence of this case, stated with particularity in Plaintiff's Amended Complaint (Docket Entry 6), clearly show obvious and malicious violations of due process.

The only exception to violations of due process against Plaintiff is the ruling made by Defendant declaring the parties divorced. In regards to the ruling declaring the parties divorced, of all the numerous rulings made by Defendant, this is the only ruling made where Plaintiff's testimony, oral arguments, and evidence were allowed to be presented to the Defendant as judge, and proper due process was adhered to. The facts and evidence will prove, that Defendant maliciously violated Plaintiff's right of due process throughout numerous proceedings occurring between March 10, 2015 and July 20, 2016. The facts and evidence prove, that only pertaining to the matter of Grounds for Divorce, was Plaintiff's Right of Due Process recognized and adhered to. Since Defendant's Right of Due Process was not violated pertaining to that single matter, Plaintiff appropriately does not seek any redress for constitutional rights violations made leading up to that single ruling.

**Defendant's False Assertion That Rooker Feldman Bars Jurisdiction Makes The U.S.C. Unenforceable**

Plaintiff directs the court's attention to the Exxon Mobile case. In the case, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005, the U.S. Supreme Court stated at ¶ 283;

> Variously interpreted in the lower courts, **the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and**

> **Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S. C. § 1738**. See, e. g., Moccio v. New York State Office of Court Admin., 95 F. 3d 195, 199-200 (CA2 1996).

At ¶ 287 in Exxon v Saudi, the Supreme Court further stated;

> **Since Feldman, this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction**. The few decisions that have mentioned Rooker and Feldman have done so only in passing or to explain why those cases did not dictate dismissal. See Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U. S. 635, 644, n. 3 (2002)

In the present matter, Defendant's assertion that the Rooker-Feldman bars federal enforcement of constitutional rights violations, is exactly to what the U. S. Supreme Court was referring: states misconstruing the Rooker and Feldman cases far beyond the contours of the doctrine established in those cases.

For Defendant to assert Plaintiff's Amended Complaint is barred from jurisdiction in the federal courts according to the Rooker-Feldman Doctrine, is a ridiculous assertion that Title 42 U.S.C. §1983 and much of the U.S.C. is unenforceable. Application of the Rooker-Feldman Doctrine to a suit filed under 42 U.S.C § 1983, would preclude prosecution of any and all state court judicial officers which cannot be true. It cannot be true that any case, any doctrine can make a title under the U.S.C. unenforceable.

Defendant is attempting to misconstrue the Rooker-Feldman Doctrine, and in so doing is suggesting 42 U.S.C § 1983 be tossed out the window and U.S. Code to be rewritten to exclude it. Defendant is attempting to assert that the federal courts have no jurisdiction over constitutional rights violations that occur in state courts. Certainly, this court must recognize that 42 U.S.C §

Case 3:16-cv-02617 Document 21 Filed 01/03/17 Page 13 of 28 PageID #: 159

1983 is in fact enforceable and it is in fact included as a Title under the U.S.C. Certainly, this court must recognize that federal courts have jurisdiction over constitutional rights violations that occur in state courts.

It was most certainly not the intent of U.S. Legislature to provide immunity to state judges who violate constitutional rights protected in 42 U.S.C § 1983. In fact, the U.S. Legislature specifically stated that judges are not immune and are even subject to injunctive relief when they violate declaratory decrees such as the U.S. Constitution.

It was most certainly not the intent of the U.S. Supreme Court in the Rooker and Feldman cases, to remove jurisdiction of federal courts provided for in Article III § 2, U.S. Constitution, 28 U. S. C. § 1331 and 42 U.S.C § 1983 over judges who violate constitutional rights. These false assertions by Defendant pervert the opinions of the U.S. Supreme Court and are offensive to the principles upon which our country was founded. Accordingly, Defendant's defense, asserted by application of the Rooker-Feldman Doctrine, fails utterly and completely.

In Magistrate Judge Brown's "Report and Recommendation", the following statement was made;

> However, for the reasons cited above, the Plaintiff is attacking the state court proceedings and the decision of a federal court cannot supplant a ruling of either the Sixth Circuit or the Supreme Court. To hold otherwise would allow any party in a state court proceeding who loses on a motion to come to federal court to have the federal district court review the matter even though the state court proceeding is not final. Such a ruling would result in absolution chaos.

With all due respect to Magistrate Judge Brown, this statement is contradictory of itself and misconstrues Plaintiff's complaint. This statement is contradictory in that, it states a federal

court cannot supplant a ruling of the Sixth Circuit or Supreme Court, while at the same time precisely suggesting that this court take the action of supplanting the rulings of the Sixth Circuit and Supreme Court. Meaning no disrespect, but in a single sentence, this statement contradicts itself.

In the preceding paragraphs above, Plaintiff proved that both the U.S. Supreme Court and the Sixth Circuit Court of Michigan E.D. agree that Rooker-Feldman is not applicable in matters where state court proceedings have not concluded. The opinions of those courts are clear in this regard. Yet in the same sentence, Magistrate Judge Brown states those courts decisions cannot be supplanted, and in the same sentence, suggests to apply the Rooker-Feldman Doctrine and in so doing supplant those decisions. This is a plainly contradictory statement in and of itself.

This statement further misconstrues Plaintiff's complaint. Plaintiff is not attacking state court proceedings, but the perversion of process, and complaining of the very obvious and malicious violations of his constitutional rights that are evidenced in certified court reporter prepared transcripts.

Furthermore, the statement "*Such a ruling would result in absolute chaos*", suggests that enforcement of the constitutional right of due process would result in chaos when in fact the opposite is true. The right of due process brings order to our courts, not chaos. The underlying litigation to this case is a perfect example. Absent proper due process in the underlying litigation, and due to Defendant's violations of Plaintiff's constitutional right of due process, Defendant's perversion of due process resulted in a ridiculous amount of unnecessary litigation and attorney fees. The perverted process in the underlying litigation resulted in combined attorney fees

exceeding two-hundred thousand dollars ($200,000) and created an enormous volume of trial court records which were completely unnecessary in what should have been a simple divorce matter. This is the true chaos created by a lack of enforcement of the constitutional right of due process. Such a ruling by this Court, and the enforcement of the constitutional right of due process would bring order, not chaos to the state courts.

The U.S. Constitution was written amid the chaos of a newly formed country, to bring about order and fairness, formerly denied in the courts of the crown in old England. To suggest a lack of enforcement of rights guaranteed by The U.S. Constitution, is to bring us full circle; right back to the unfairness that existed in the courts of the crown, for which The U.S. Constitution was designed to protect against, through the wisdom of our forefathers.

**THE DEFENDANT IS NOT ENTITLED TO ABSOLUTE JUDICIAL IMMUNITY**

U.S. Code, Title 42, Chapter 21, Subchapter I, § 1983 specifically states "*Every Person*" who under cover of law, deprives a citizen of rights guaranteed by the Constitution and laws is subject to suit. It could not be more clear that judges do not have immunity when they violate a citizen's constitutional rights. 42 U.S.C § 1983 further states, that judges are subject to injunctive relief when they violate constitutional rights. Therefore, not only are judges not immune, but they are subject to injunctive remedy as well. The U.S.C. could not be more clear in this regard.

U.S. Code, Title 42, Chapter 21, Subchapter I, § 1983 states;

> **Every person who, under color of any statute, ordinance, regulation, custom, or usage**, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, **shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer** for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted **unless a declaratory decree was violated** or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C § 1983 specifically states judges are not immune from injunctive relief when they violate a declaratory decree. Blacks Law Dictionary 2ND Edition, defines "declaratory decree" as follows;

> Something which explains, or ascertains what before was uncertain or doubtful; as a declaratory statute, which is **one passed to put an end to a doubt as to what the law is, and which declares what it is, and what it has been.**
>
> **Law Dictionary – Alternative Legal Definition**
>
> Explanatory; designed to fix or elucidate what before was uncertain or doubtful. Declaratory action. In Scotch law. An action in which the right of the pursuer (or plaintiff) is craved to be declared, but nothing claimed to be done by the defender, (defendant.) Ersk. Inst. 5, 1, 46. Otherwise called an "action of declarator."-Declaratory decree. In practice. **A binding declaration of right in equity without consequential relief.** Declaratory judgment. A declaratory judgment is one which simply declares the rights of the parties, or expresses the opinion of the court on a question of law, without ordering anything to be done. **Declaratory part of a law. That which clearly defines rights to be observed and wrongs to be eschewed**. Declaratory statute. One enacted for the purpose of removing doubts or putting an end to conflicting decisions in regard to what the law is in relation to a particular matter. It may either be expressive of the common law, (1 Bl. Comm. 86; Gray v. Bennett 3 Metc. [Mass.] 527;) or may declare what shall be taken to be the true meaning and intention of a previous statute, though in the latter case such enactments

are more commonly called "expository statutes." *Blacks Law Dictionary 2ND Edition*

The U.S. Constitution is exactly such a declaratory decree. Of this, there can be no doubt.

The Preamble of the U.S. Constitution States;

> We the people of the United States, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, **do ordain and establish this Constitution for the United States of America.** U.S. *Const. Preamble*

Amendment XIV, § 1, U.S. Constitution States;

> **All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.** *U.S. Const. amend XIV § 1*

The U.S. Constitution by definition is a declaratory decree. The U.S. Constitution, "*put an end to a doubt as to what the law is, and which declares what it is, and what it has been*". The U.S. Constitution is, a "*binding declaration of right in equity without consequential relief*". The U.S. Constitution "*clearly defines rights to be observed and wrongs to be eschewed*"

In Magistrate Judge Brown's "*Report and Recommendation*", the magistrate incorrectly affirms Defendant's statement of the law on judicial immunity. The magistrate judge references the Defendant's case citation, Mireles v. Waco, 502 U.S. 9 (1991) and that "*judicial immunity is an immunity from suit, not just from ultimate assessment of damages, and judicial immunity is*

*not overcome by allegations of bad faith or malice, the existence which ordinarily would* (sic) *cannot be resolved without engaging in discovery and eventually trial*".

Proper analysis of the Mireles v. Waco case shows that judges are in fact not absolutely immune. At 12 in the Mireles case, The U.S. Supreme Court stated;

> **Rather, our cases make clear that the immunity is overcome in only two sets of circumstances**. First, **a judge is not immune from liability for nonjudicial actions**, i. e., actions not taken in the judge's judicial capacity. Forrester v. White, 484 U. S., at 227-229; Stump v. Sparkman, 435 U. S., at 360. Second, **a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction**. Id., at 356-357; Bradley v. Fisher, 13 Wall., at 351.

In this single statement, the U.S. Supreme Court makes it clear that judges are not absolutely immune and proves false, the Defendant's assertion and magistrate judge's agreement that Judges are "*absolutely immune*". Judges are not immune from liability for non-judicial actions, and judges are not immune for actions, though judicial in nature, taken in absence of all jurisdiction. Absolute immunity is therefore a false assertion.

In the Mireles case, at 13, the Supreme Court goes on to say;

> **Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge."** Stump v. Sparkman, 435 U. S., at 362. **But if only the particular act in question were to be scrutinized**, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Id., at 356. See also Forrester v. White, 484 U. S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). **Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself."** 435 U. S., at 362. In other

> words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

In dissent to Mireles ruling, Justice Stephens stated;

> Judicial immunity attaches only to actions undertaken in a judicial capacity. Forrester v. White, 484 U. S. 219, 227-229 (1988). In determining whether an action is "judicial," we consider the nature of the act and whether it is a "function normally performed by a judge." Stump v. Sparkman, 435 U. S. 349, 362 (1978).
>
> Respondent Howard Waco alleges that petitioner Judge Raymond Mireles ordered police officers "to forcibly and with excessive force seize and bring" respondent into petitioner's courtroom. App. to Pet. for Cert. B-3, ¶ 7(a). **As the Court acknowledges, ordering police officers to use excessive force is "not a `function normally performed by a judge.**' " Ante, at 12 (quoting Stump v. Sparkman, 435 U. S., at 362). The Court nevertheless finds that judicial immunity is applicable because of the action's "relation to a general function normally performed by a judge." Ante, at 13.
>
> Accepting the allegations of the complaint as true, as we must in reviewing a motion to dismiss, petitioner issued two commands to the police officers. **He ordered them to bring respondent into his courtroom, and he ordered them to commit a battery. The first order was an action taken in a judicial capacity; the second clearly was not**. Ordering a battery has no relation to a function normally performed by a judge. If an interval of a minute or two had separated the two orders, it would be undeniable that no immunity would attach to the latter order. **The fact that both are alleged to have occurred as part of the same communication does not enlarge the judge's immunity.**

So now, with a more comprehensive view of the Supreme Court's decision in the Mireles case, we should apply the Supreme Court's logic to Plaintiff's cause of action and Complaint in this matter. The Supreme Court plainly established that judges are not absolutely immune, and

that judicial immunity is lost for non-judicial actions, and for actions, though judicial in nature, are taken in absence of all jurisdiction. That much is clear and already Defendant's defense fails.

The Supreme court agreed that the judge's action in the Mireles case was not a judicial function. The same is true in this case. Repeated and obvious deprivation of a constitutional right of due process is plainly not a judicial function.

The Supreme Court also discusses that a single erroneous act outside of judicial capacity should not in and of itself remove judicial immunity and Plaintiff agrees with this assessment. This is what the Supreme Court was alluding to in its statement "***But if only the particular act*** *in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge*."

In the present case, the **Defendant did not just violate Plaintiff's right of due process on a single occasion**. The facts stated in Plaintiff's "*Amended Complaint*" (Docket Entry 6), which are evidenced in **certified court reporter transcripts, prove that the Defendant maliciously and grossly violated Plaintiff's constitutional right of due process on multiple occasions. Even more disturbing though, is that the Defendant evidenced his knowledge of constitutional rights violations against Plaintiff and lied about reading Plaintiff's motions and responses to motions in a poorly veiled attempt to cover up his constitutional rights violations**. These facts are undeniable and irrefutable. Therefore, Defendant's claim of judicial immunity fails utterly and completely.

**THE ELEVENTH AMENDMENT DOES NOT BAR A CLAIM FOR RELIEF AGAINST DEFENDANT IN HIS OFFICIAL CAPACITY**

Defendant falsely asserts that U.S. Const. amend. XI, bars a claim for relief against Defendant in his official capacity which is a false and failing argument. In his Memorandum Response to Motion to Dismiss (Docket Entry 17, p. 15 – 20), Plaintiff proved this is a false assertion, and cited the following cases;

In the case, Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976, the Supreme Court stated;

> The principal question presented by these cases is whether, as against the shield of sovereign immunity afforded the State by the Eleventh Amendment, Edelman v. Jordan, 415 U. S. 651 (1974), **Congress has the power to authorize federal courts to enter such an award against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment.** The Court of Appeals for the Second Circuit held that the effect of our decision in Edelman was to foreclose Congress' power.

The Supreme Court affirmed it previous decision in the case, Atascadero State Hospital v. Scanlon, 473 US 234 - Supreme Court 1985. In this case, the Supreme Court stated;

> Moreover, the **Eleventh Amendment is "necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment,"** that is, by Congress' power "to enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." Fitzpatrick v. Bitzer, 427 U. S. 445, 456 (1976). As a result, when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent.

The Supreme Court also affirmed the same in Hutto v. Finney, 437 US 678 - Supreme Court 1978 as follows;

But time has not stood still. Two Terms ago, we decided *Fitzpatrick* v. *Bitzer,* which for the first time in the recent history of the Court asked us to decide "**the question of the relationship between the Eleventh Amendment and the enforcement power granted to Congress under § 5 of the Fourteenth Amendment.**" *Id.,* at 456. **There we concluded that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, . . . are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment.**" *Ibid.* (Citation omitted.) And we went on to hold:

> **"Congress may, in determining what is `appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."** Ibid.

Then, in *Monell* v. *New York City Dept. of Social Services, supra,* decided only weeks ago, **we held that the Congress which passed the Civil Rights Act of 1871, now § 1983—a statute enacted pursuant to § 5 of the Fourteenth Amendment, see 436 U. S., at 665—"*did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies.**" *Id.,* at 690. This holding alone would appear to be enough to vitiate the vitality of *Fitzpatrick's* explanation of *Edelman.*

Moreover, central to the holding in *Monell* was the conclusion that the Act of Feb. 25, 1871, ch. 71, § 2, 16 Stat. 431, provided a definition of the word "person" used to describe the class of defendants in § 1983 suits. Although we did not in *Monell* have to consider whether § 1983 as properly construed makes States liable in damages for their constitutional violations, **the conclusion seems inescapable that, at the very least, § 1983 includes among possible defendants "a class . . . which literally includes States."** *Edelman* v. *Jordan,* 415 U. S., at 672. This follows immediately from the language of the Act of Feb. 25, 1871:

> "[I]n all acts hereafter passed . . . the word `person' may extend and be applied to bodies politic and corporate . . . unless the context shows that such words were intended to be used in a more limited sense . . . ."

**The phrase "bodies politic and corporate" is now, and certainly would have been in 1871, a synonym for the word "State."** See, *e. g.,*

> *United States* v. *Maurice,* 26 F. Cas. 1211, 1216 (No. 15,747) (CC Va. 1823) (Marshall, C. J.) ("The United States is a government and, consequently, a body politic and corporate"). See also *Pfizer Inc.* v. *Government of India,* 434 U. S. 308 (1978).
>
> Given our holding in *Monell,* the essential premise of our *Edelman* holding—that no statute involved in *Edelman* authorized suit against "a class of defendants which literally includes States," 415 U. S., at 672—would clearly appear to be no longer true. **Moreover, given *Fitzpatrick's* holding that Congress has plenary power to make States liable in damages when it acts pursuant to § 5 of the Fourteenth Amendment, it is surely at least an open question whether § 1983 properly construed does not make the States liable for relief of all kinds, notwithstanding the Eleventh Amendment. Whether this is in fact so, must of course await consideration in an appropriate case.**

Accordingly, Defendant finds no protection for his malicious violations of Plaintiff's constitutional right of due process under the Eleventh Amendment, neither as a person, nor in his official capacity.

**U.S. DISTRICT COURT, MIDDLE DISTRICT OF TN HAS JURISDICTION**

As stated in his Response to Motion To Dismiss (Docket 17 p. 9), pursuant to U.S. Const. art. III § 2, which states; "*The judicial power shall extend to* ***all cases****, in law and equity, arising under this Constitution, the laws of the United States...* ", therefore this case falls under federal jurisdiction because of Defendant's violations of Plaintiff's constitutionally guaranteed rights.

Plaintiff further established this Court's jurisdiction in his Amended Complaint. (Docket Entry 6, p. 3)

With all due respect to Magistrate Judge Brown, **the Magistrate incorrectly suggests, and does not support with statute or case citation**, that the proper venue for Plaintiff's complaint is through "*the state appellate court, and if necessary, a petition for certiorari to the*

*United States Supreme Court*" (Docket Entry 20 p. 5) which is not true. Plaintiff is in fact seeking proper state court appellate review of the many erroneous and malicious rulings made by Defendant. Plaintiff is of course, also properly seeking redress, for constitutional rights violations in this Court pursuant to U.S. Const. art. III § 2, 28 U. S. C. § 1331, and Title 42 U.S.C. §1983 pursuant to which this Court has jurisdiction.

In the case, Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 US 635 - Supreme Court 2002, at ¶ 642, The U.S. Supreme Court stated;

> For we agree with the parties' alternative contention, that even if § 252(e)(6) does not confer jurisdiction, **it at least does not divest the district courts of their authority under 28 U. S. C. § 1331** to review the Commission's order for compliance with federal law.

28 U. S. C. § 1331 states;

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

This is exactly what the Defendant is attempting to do in citing Rooker-Feldman Doctrine. The Defendant is attempting to divest the district courts authority under both 28 U. S. C. § 1331 and 42 U.S.C. §1983. Plaintiff's assertion in this regard is established and proven above.

**PLAINTIFFS ALLEGATIONS AGAINST DEFENDANT ARE NOT BARRED BY STATUTE OF LIMITATIONS**

The Defendant incorrectly argues, and Magistrate Judge Brown incorrectly agrees (meaning no disrespect), that Defendant's earliest violations of Plaintiff's constitutional rights are barred by the statute of limitations which is simply not true. In all actions brought under 42 U.S.C. § 1983, "… the state statute of limitations governing actions for personal injuries is to be

applied." Berndt v. State of Tenn., 796 F.2d 879, 883 (6th Cir. 1986). "The statute of limitations commences to run when the plaintiff knows or has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984).

As stated and evidenced, in his Memorandum Response to Motion to Dismiss (Docket Entry 17, p. 10 – 13), Plaintiff did not know, did not have reason to know that his constitutional right of due process was being violated. Therefore, none of Defendant's malicious violations of Plaintiff's constitutional right of due process are protected by any statute of limitations.

**CONCLUSION**

Plaintiff has a clear cause of action and rightful claim for redress and equity. Defendant is not protected by judicial immunity, even according to Defendant's own citations. None of Defendant's actions are protected by any statute of limitations. The Rooker-Feldman Doctrine is clearly not applicable in this case, even according to the Defendant's own citations. The Eleventh Amendment does not bar any claim or relief against Defendant in his official capacity due to Defendant's violations of constitutional rights guaranteed by the Amendment XIV of The United States Constitution.

This Court should set an evidential hearing so that Plaintiff can present his evidence and make his oral arguments.

The Magistrate Judge's "*Report and Recommendation*" should be stricken from the record in its entirety due to the facts that it (1) includes unnecessary and unjust belittling and demeaning language and misrepresents Plaintiff's cause of action, (2) was prepared in violation

of Rule 72 without holding an evidentiary hearing, and (3) misrepresents the opinions of the courts in the cases cited.

Defendant's Motion to Dismiss should be denied with prejudice, a jury should be empaneled, try the facts of this case and render damages consistent.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and via First Class US Mail, postage prepaid to;

Joseph Ahillen, BPR # 028378
Assistant Attorney General
Civil Rights and Claims Division
Office of the Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207

On this the 3rd day of January, 2017

John Anthony Gentry, CPA

## Oath

**State of Tennessee )**

**County of** Maury **)**

I, John Anthony Gentry, after being first duly sworn according to law, do hereby make oath and affirm that all statements included in PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND MOTION TO STRIKE, are true and correct to the best of my knowledge, information and belief

John Anthony Gentry

Sworn to and subscribed before me, this the 3rd day of January, 2017

Notary Public [signature]

My Commission Expires 5/22/2019

KAREN PETERS STATE OF TENNESSEE NOTARY PUBLIC MAURY COUNTY